**IN THE COURT OF APPEALS OF IOWA**

No. 21-1470
Filed February 16, 2022

**IN THE INTEREST OF A.B.,**
**Minor Child,**

**S.G., Mother,**
    Appellant,

**B.B., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Polk County, Rachael E. Seymour,

District Associate Judge.

A mother and a father appeal the termination of their parental rights to a

child born in 2011. **AFFIRMED ON BOTH APPEALS.**

Teresa M. Pope of Branstad & Olson Law Office, Des Moines, for appellant

mother.

Alexandra M. Nelissen of Advocate Law, PLCC, Clive, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee.

Nicole Garbis Nolan, Youth Law Center, Des Moines, attorney and guardian

ad litem for minor child.

Considered by Vaitheswaran, P.J., and Tabor and May, JJ.

**VAITHESWARAN, Presiding Judge.**

A mother and a father separately appeal the termination of their parental rights to a child born in 2011. Both parents contend (1) the State failed to prove the grounds for termination; (2) termination was not in the child's best interests; and (3) the district court should not have ordered termination in light of their bond with the child.[1] The mother additionally argues the district court "erred in granting the State's motion for modification of disposition." The father additionally asserts the district court should have placed the child in a guardianship with the child's grandmother.

### I.        *Grounds for Termination*

The district court terminated parental rights on several grounds including Iowa Code section 232.116(1)(f) (2021), which requires proof of four elements including proof the child cannot be returned to parental custody. We will address that ground alone. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012) ("When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record.").

The mother had a long history of alcohol abuse. She started drinking at the age of fourteen and was thirty-four at the time of the termination hearing. Her involvement with the department of human services began in 2014 and continued on and off through the inception of the underlying child-in-need-of-assistance

---

[1] The parents refer to the bond in the context of their best-interests argument, but it is a separate statutory issue. *See* Iowa Code § 232.116(3)(c).

action in 2019.[2] The State alleged she consumed alcohol to excess and got into a fight with a friend, accidentally injuring one of her children in the process. The child that is the subject of this appeal was removed and was placed with his paternal grandmother under department supervision. The parties stipulated to continued removal. The district court later adjudicated the child in need of assistance. A year later, the court granted the mother a six-month extension to facilitate reunification. The child was returned to her care.

The reunification lasted thirty-seven days. The mother relapsed, and the child was again moved to the home of his paternal grandmother. Disturbed by certain aspects of the grandmother's care, the State filed a motion to modify the child's placement. Following an evidentiary hearing, the district court granted the motion, and the department transferred the child from her home to foster care.

The department employee overseeing the case testified at the modification-of-placement hearing and again at the termination hearing. She expressed concern with the mother's "ongoing consumption" of alcohol, her "insight into her drinking," her "honesty," and, specifically, "whether or not she's really been sober the entire case given things that continue to be reported regarding her drinking." She asserted the child was not "safe in [the mother's] care given her drinking" and "this poor little kid has really just been kind of drug around for five years, and it's not fair to him." She later reaffirmed her position, citing "the time that this family has been involved" with the department and the "continued drinking."

---

[2] A prior child-in-need-of-assistance action was closed just two months earlier.

The mother conceded the child could not be returned to her at the time of the termination hearing. She testified, "I still have myself to work on. I'm still freshly new to sobriety again. I still have issues that I need to work on. You know, I can't take care of anyone else if I can't take care of myself first."

Turning to the father, the department reported he began using marijuana at the age of thirteen and continued using the drug "a couple times a month." He tested positive for marijuana after the child-in-need-of-assistance petition was filed. He failed to appear for the adjudication hearing, and his attorney stated he did not know why. He also failed to appear for the termination hearing even after his attorney attempted to reach him.[3] He initially did not participate in supervised visits but later attended ninety-minute weekly sessions. The department employee opined that the father had "done virtually nothing to attempt reunification." She testified he did not "follow through" with the recommendations contained in a substance-abuse evaluation even after she "reached out to him several times."

The father's ability to safely parent the child was called into question at the time of the child's removal from the grandmother for placement in foster care. The father was present and the department employee observed him with "bloodshot, watery eyes," leading to "concerns . . . that he was under the influence." She also noted that "[h]e was very aggressively yelling, cussing, [and] angry."

---

[3] The father initially told his attorney he intended to contest the termination petition and he planned to appear on the second day of the termination hearing. He later informed the attorney he did not intend to appear on either day. When the second day arrived, the father asked if he could listen in by phone. All concerned agreed that was acceptable as long as he testified in person. The father did not testify.

On our de novo review, we conclude the State proved the child could not be returned to either parent.

## II.    *Best Interests*

Termination must be in the child's best interests. Iowa Code § 232.116(2). "[T]the court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010) (citing Iowa Code § 232.116(2)).

With respect to the mother, the department employee testified "the safety concern when there's that pattern of return and relapse, return and relapse" is that the child is essentially "parentless." She opined returning the child to the mother was not in the child's best interest because "[u]p until recently," the child was not "successful at completing an entire year in the same school" and "the uncertainty of knowing what forever is going to look like for him with the remove/return kind of pattern we've seen in the six years is hard for him."

As for the father, the employee testified she had no additional knowledge of his participation in reunification services other than the weekly supervised visits. His minimal reunification efforts, together with the employee's description of his demeanor and conduct at the time of the transfer, lead us to conclude reunification with the father would have jeopardized the child's safety.

On our de novo review, we agree with the district court that termination of parental rights was in the child's best interests.

### III.    Exception to Termination

The parents argue their parental rights should not have been terminated given the bond they shared with the child.  *See* Iowa Code § 232.116(1)(c).  The service provider who supervised visits testified the mother and child's interactions were "warm" and "funny" and the father was "engaged" and was "[v]ery hands-on." That said, neither parent was in a position to safely parent the child on a full-time basis.  We conclude the district court acted appropriately in declining to grant this exception to termination.

### IV.    Modification of Disposition

The mother argues the district court should not have removed the child from her care in February 2021.  The State responds that the issue is moot.  We agree. *See In re A.M.H.*, 516 N.W.2d 867, 871 (Iowa 1994) ("[W]e need not decide the validity of the ex parte removal order or the order entered after hearing because this issue is moot. . . .  Any error committed in granting the temporary ex parte order cannot now be remedied.  We cannot go back in time and restore custody based on alleged errors in the initial removal order.").

### V.    Guardianship

The father contends the district court should have "chosen to place this child in the guardianship of the grandmother rather than terminating [his] rights." Creation of a guardianship is statutorily authorized.  *See* Iowa §§ 232.104(2)(d)(1), 232.117(5).  But it "is not a legally preferable alternative to termination."  *In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018) (quoting *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017)).  The district court stated the grandmother was "inappropriate[] as a placement," citing her lack of cooperation at the time of the child's transfer to foster

care. In an earlier order, the court explicated other concerns with the grandmother's supervision, including her willingness to leave the child with people who were not approved by the department. The record supports the court's findings. In addition, the child was uncertain about his preference, neither the father nor the paternal grandmother testified in support of a guardianship, and the State and guardian ad litem recommended termination. *Id.* On our de novo review, we conclude the creation of a guardianship with the grandmother in lieu of terminating the father's parental rights was not a viable option.

We affirm the district court's thorough order terminating parental rights to this child.

**AFFIRMED ON BOTH APPEALS.**